**BETHLEHEM ENGINEERING EXPORT CO. v. CHRISTIE et al.**

No. 305.

Circuit Court of Appeals, Second Circuit.
July 10, 1939.

Larkin, Rathbone & Perry, of New York City (Charles B. McGroddy, Jr., of New York City, of counsel), for appellant.

Bond & Babson, of New York City (Walter H. Bond, of New York City, of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment, denying a motion for a preliminary injunction, and dismissing the complaint for insufficiency in law upon its face. All the questions raised can be disposed of by a consideration of the complaint alone, which was in two counts, so little different that the contents of the first only need be stated. The plaintiff alleged that the defendant, Christie, had invented and patented a military tank of unique efficiency, of which he had built one example which was then in the town of Hempstead, New York. That on August 9th, 1938, the plaintiff entered into a contract with Christie and his company (the other defendant) constituting the plaintiff its exclusive agent for the sale and manufacture of the tank and for the sale of rights for its manufacture by others. That the plaintiff had performed the conditions on its part—the payment of $5,000—but the defendants refused to allow the plaintiff's engineer to make drawings of the tank, preparatory to negotiating for the sale of licenses, and had refused to deliver to the plaintiff the necessary drawings or blue-prints. That on the contrary they had removed some of the drawings already made by the plaintiff's engineer to New Jersey, whither they were about to take the tank also. That since the tank was unique and of great value, and since the plaintiff had made arrangements to demonstrate it to prospective buyers and had negotiated with various persons for the sale of manufacturing rights, it was entitled to a judgment of specific performance. Upon this complaint and some affidavits not necessary to describe, the plaintiff moved for an injunction pendente lite,

which the defendants countered with a motion to dismiss.

The contract described the defendants collectively as "Christie", and the plaintiff as "Bethlehem"; and recited that "Christie is desirous of selling its rights to Bethlehem to act as exclusive agent for all countries in the world, and Bethlehem is desirous of purchasing such rights, or to sell its tanks and have them manufactured wherever it deems practical to the Parties of this contract." The plaintiff therefore agreed to pay to the defendants $5,000 in consideration of the rights to be granted, and both parties agreed "that the rights to be sold to any country, its terms should be as follows: each country in case they wish to acquire the manufacturing rights to pay the sum of $50,000 in cash for which Christie agrees to supply the purchaser with a complete set of designs * * * also * * * with a master mechanic or draughtsman * * * until the manufacturer has become expert and efficient and no longer needs the services of an expert. This sum and payment of $50,000 by the purchaser is to be divided equally between Bethlehem and Christie." Because $50,000 was "not an equitable payment" for the rights conveyed "Bethlehem agrees to negotiate on each particular country with whom a manufacturing contract is made with Christie to arrive at a figure for additional payment for such rights, to be discussed in each individual case". Again "before concluding a contract with England, suitable arrangements to Bethlehem and Christie will have to be made with Col. Jervis of the firm of Hitchkins, Jervis and partners." The defendants agreed to give a demonstration of the tank at the plaintiff's request, and to furnish the plaintiff with adequate information in the form of drawings, blue-prints and the like. The contract was to last for one year, but would be automatically extended for five years, "in the event that manufacturing facilities shall have been established, or not less than $100,000 shall have been received during the one year period mentioned in the agreement."

This contract is so obscure, and, strictly taken, so incoherent, that nobody can be sure of its meaning, but so far as we can spell it out, this is what it was. The defendants made the plaintiff its exclusive agent to sell licenses to prospective manufacturers of their tank in foreign countries —perhaps also in this country as well, though apparently it was not included. The plaintiff was not free to sell such licenses generally, but only for those countries where the parties thought it "practical" to do so. The minimum license fee was to be $50,000, but the plaintiff was to try to get more, and the parties were to discuss the amount in advance: probably this implied that they should agree upon it. As to England both parties must make "suitable arrangements" with Jervis before the plaintiff could conclude any contract. The plaintiff was generally to cooperate with the defendants in the agency. Arguendo, we shall assume that these promises created a valid contract which could be enforced at law like any other; but it does not follow that equitable remedies would also be available to the plaintiff. They would not be, if they involved repeated recourse to the court in order to do justice to both parties. First, it is apparent that the defendants could not successfully be compelled to perform their promises in kind. This might not have been true, if they had undertaken to allow the plaintiff to sell licenses to foreign manufacturers, either unconditionally, or upon definite and ascertainable terms; but they had not, the plaintiff could only sell in those foreign countries where the defendants thought it "practical" to do so. Obviously, people might differ as to where that would be true; and the issue would be whether the defendants honestly thought a given country impractical (Crawford v. Mail & Express Pub. Co., 163 N.Y. 404, 57 N.E. 616) or whether a reasonable person would think so (Doll v. Noble, 116 N.Y. 230, 22 N.E. 406, 5 L.R.A. 554, 15 Am.St.Rep. 398) according to the interpretation put upon the words of the recital. In either case a troublesome and extensive inquiry would be involved. Again, while the meaning of the clause relating to the charge for licenses is extremely obscure, even in this contract, if it meant, as we think, that the price must be agreed upon in each case, and that $50,000 was only a minimum, it would be impossible to enforce the contract without deciding whenever any dispute arose, what was the reasonable price to which the defendants should agree. Moreover, the same would be measurably true, though the contract merely required the defendants honestly to discuss the proper sum: whether they had done so would be a vexatious issue. It is scarcely necessary to labor the point that the stipulation regarding Jervis was even more un-

enforcible. It is therefore clear beyond question that specific performance would not be feasible; and this is quite independent of any question of mutuality.

However, the plaintiff argues, that even so, under the doctrine of Lumley v. Wagner, 1 Deg.M. & G. 604, it was at least entitled to an injunction forbidding the defendants to engage any other agent to sell licenses. At first blush there is more plausibility in this position, for the tank is alleged to be unique and irreplaceable, and the very basis of such injunctions is that performance cannot be specifically enforced. Why then should not the defendants be forbidden to authorize anyone else to sell licenses, if they will not perform their contract with the plaintiff? In spite of the apparent justice of that result, we think that an injunction is also impracticable for the following reasons. It would indeed be easy to forbid the defendants to contract with anyone else, and that might force them to go on with the plaintiff's contract. But the continuance of such an injunction would depend upon continuance of the defendants' obligation to the plaintiff; and the continuance of that obligation would in turn depend upon the plaintiff's continued performance of its duties under the contract. These are as uncertain as the defendants' obligations which we have just discussed. They involve, not only the faithful prosecution of the business in general (which of itself might involve constant scrutiny) but co-operation with the defendants, not only in deciding where licenses could "practically" be sold, but what was a reasonable price to ask. Every reason which makes a specific performance of the defendants' obligation impracticable applies equally to an injunction conditional on the plaintiff's performance, since the two performances are so mutually interwoven. It may be asked why the same reasoning does not apply to cases in which a principal obtains an injunction against an agent, or an employer against an employee. So it must, if the principal's performance is a condition upon the agent's obligation, and is of a kind which demands the continuous or repeated supervision of a court. Ordinarily that is not the case; when the principal pays, he has performed the only condition precedent, and payment is an act which a court can easily supervise. If his performance be less definite, we should anticipate the opposite result. We have been able to find only two cases which have dealt with the point. Singer Sewing Machine Co. v. Union Embroidery Co., Fed.Cas. No. 12,904 and Brush-Swan Electric Light Co. y. Brush Electric Co., C.C., 41 F. 163, 169. In neither was the distinction observed which we have mentioned, and we are not disposed to follow them. On the other hand the view we take is, we think, supported by the doctrine that even though the discharge of an agent be a breach of contract which gives him a right of action, the court will not restore him to his position. Engemoen v. Rea, 8 Cir., 26 F.2d 576. We submit that the basis for this is that to do so the court must undertake supervision over the agent's conduct of his duties, and, as we have seen, the same supervision is inevitable if the principal be merely enjoined.

Therefore, no injunction was proper and the plaintiff's motion was rightly denied. A question might have arisen as to the dismissal of the complaint, had it contained any allegation of damages; but it did not, and the plaintiff has not suggested, even in this court, that it should stand as a complaint of law. The judge was therefore right not to give leave to plead over, but to dismiss the action finally.

Judgment affirmed.