David H. GARVIN, Plaintiff,

v.

AMERICAN MOTORS SALES CORPORATION, Defendant.

Civ. A. No. 17959.

United States District Court
W. D. Pennsylvania.

March 15, 1962.

668

Gene K. Lynch, Pittsburgh, Pa., for plaintiff.

John G. Buchanan, Jr., Robert E. Mertz, Pittsburgh, Pa., for defendant.

WALLACE S. GOURLEY, Chief Judge.

This is an action under the Automobile Dealers Franchise Act to recover damages for an alleged lack of good faith in not renewing an automobile dealership franchise agreement at the time of its expiration, 15 U.S.C.A. §§ 1221–1225.

Upon jury trial, verdict was returned in favor of the plaintiff in the amount of $20,000.00 as damages and loss of net profits based on the franchise not being renewed from March 2, 1959 through March 2, 1960, and by separate verdict awarded no damages from March 2, 1960.

The matters before the Court are:

1. Motion of defendant for judgment notwithstanding the verdict for the following reasons:

a. The Automobile Dealers Franchise Act is unconstitutional.

b. The evidence failed to establish a violation of the Automobile Dealers Franchise Act.

c. No evidence was adduced from which the jury was justified in awarding damages for loss of profits.

and/or

2. Motion of defendant for new trial.

a. The Court erred in permitting the introduction of the United States Mortality Tables and by instructing the jury concerning their use.

b. The Court erred in refusing to instruct the jury as requested by defendant as follows:

(1) It is not coercion or intimidation for the defendant to insist that the plaintiff carry out the terms of the franchise agreement and of any promises that the plaintiff made to the defendant prior to or at the time of receiving a new franchise in March, 1958. (Defendant's Point No. 6.)

(2) It is not coercion or intimidation for the defendant to tell plaintiff that if the plaintiff failed to live up to the promises he made at the time the franchise was last granted to him, the defendant would have to consider not renewing the franchise when it expired. (Defendant's Point No. 7.)

(3) Insistence by a manufacturer that a dealer carry out the terms of his franchise contract is not coercion since the manufacturer has a legal right to expect compliance with the contract. (Defendant's Point No. 9.)

(4) It is not coercion or intimidation for a manufacturer to fail to renew an inefficient or undesirable dealer's franchise. (Defendant's Point No. 11.)

(5) It is not coercion or intimidation for a manufacturer to fail to renew a dealer's franchise if the dealer is failing to provide adequate representation and a suitable outlet for the manufacturer's products in the area the dealer is expected to serve. (Defendant's Point No. 12.)

(6) In granting a franchise it is not coercion or intimidation for a manufacturer to insist that the dealer maintain adequate capital in his business to enable the dealer to carry an adequate inventory of new cars and to handle the financing and disposition of used cars. (Defendant's Point No. 21.)

(7) If you can find that the defendant is liable to the plaintiff, you can award damages to the plaintiff only on the basis of evidence that is accurate and definite. (Defendant's Point No. 24.)

(8) In computing damages on the basis of net profits that the plaintiff would have made had his franchise been renewed for an additional year, you must deduct from such calculation the amount of any earnings that the plaintiff had during that year from other employment or business or any earnings he reasonably would have had if he had diligently sought or undertaken other employment for which he was suited. (Defendant's Point No. 27.)

(9) When the defendant granted the plaintiff a new franchise in March, 1958, the defendant was entitled to specify the terms and conditions under which the franchise would be granted and those terms and conditions could properly include requirements that the plaintiff improve his facilities in size and attractiveness, maintain working capital and credit regarded as adequate by the defendant, hire a full-time salesman and submit the financial reports required by the defendant. (Defendant's Point No. 5.)

(10) In deciding to renew or not renew the plaintiff's franchise, the defendant was entitled to exercise an honest business judgment whether the plaintiff was providing adequate representation and a suitable outlet for Rambler products in the Aliquippa area. (Defendant's Point No. 13.)

(11) If the defendant failed to renew the plaintiff's franchise because of an honest business judgment that the difficulties and expense of doing business with the plaintiff outweighed the value of any business that could be done with him, this exercise of judgment is not in itself grounds for inferring bad faith or coercion on the defendant's part from its failure to renew the franchise. (Defendant's Point No. 14.)

(12) If the defendant failed to renew the plaintiff's franchise because of an honest business judgment that the plaintiff was not providing adequate representation or a suitable outlet for Rambler products in the Aliquippa area, you are not entitled to infer bad faith or coercion merely because you disagree with the defendant's business judgment or because it is your own opinion that the defendant's judgment was erroneous. (Defendant's Point No. 15.)

(13) If the defendant made an honest business judgment that the plaintiff was not providing adequate representation or a suitable outlet for Rambler products in the Aliquippa area at the time that the defendant decided not to renew the plaintiff's franchise, you are not entitled to infer bad faith or coercion on the part of the defendant merely because subsequent events may have shown that the defendant's judgment was wrong. (Defendant's Point No. 16.)

(14) If the defendant failed to renew the plaintiff's franchise because the defendant reasonably believed that the plaintiff's sales facilities and location, his aptitude for sales promotion and merchandising, and his ability to maintain working capital in his business were inadequate to meet the merchandising standards now prevailing in the automobile business, you are not entitled to infer bad faith and coercion because plaintiff's method of doing business may have been satisfactory in bygone years when different merchandising methods were used. (Defendant's Point No. 18.)

(15) The defendant has the right to establish reasonable standards of sales performance by its dealers and may, without incurring liability, refuse to renew a dealer's franchise if the dealer fails to meet those standards. (Defendant's Point No. 19.)

c. The verdict is against the evidence and against the weight of the evidence.

The Automobile Dealers Franchise Act provides in substance that an automobile dealer may bring suit against any automobile manufacturer engaged in commerce in any District Court of the United States for the failure of the automobile manufacturer to act in good faith in renewing the franchise of the dealer. 15 U.S.C.A. § 1222.

The Act defines good faith as the duty on the part of each party to the franchise to act in a fair and equitable manner toward each other so as to guarantee the other party freedom from coercion, intimidation, or threats of coercion and intimidation. 15 U.S.C.A. § 1222.

## MOTION FOR JUDGMENT NOV

### I. CONSTITUTIONALITY

█ Preliminarily, I shall advert to the issue posed in defendant's questioning the constitutionality of the Automobile Dealers Franchise Act. In this connection, the law is well settled that a member of the District Court has no authority to determine the constitutionality of an Act of Congress but, on the contrary, such determination must be made by a statutory court. 28 U.S.C.A. § 2281; Florida Lime & Avocado Growers, Inc., v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568.

█ If the Court is in error in this conclusion, I believe that the Act of Congress is constitutional. It is not vague and uncertain, nor is the classification of automobile manufacturers so unreasonable that its enforcement constitutes a denial of due process under the Fifth Amendment of the Constitution of the United States.

This position is given further credence in the realization that a similar statute has been constitutionally sustained in the state of Wisconsin, Kuhl Motor v. Ford Motor Co., 270 Wis. 488, 71 N.W.2d 420, 55 A.L.R.2d 467.

### II. WEIGHT OF THE EVIDENCE

The many aspects and ramifications of this proceeding are analogous to the old country doctor who had a diversified clientele and who would treat his patients for everything from a cut finger to major surgery, employing some of the more awkward and cruder techniques such as administering anesthesia without a nurse

and performing major surgery in his office. His patients were highly satisfied with his service. Then, upon the advent of the newest skills and medical achievements, with their accompanying specialization and modernized hospitals, this country doctor was somewhat bewildered and forced to walk the treadmill of obsolescence and stratification. Nevertheless, he retained his regular patients and a few referrals, but was unable to embellish his practice with new patients from surrounding areas.

Here, too, the plaintiff was an automobile dealer who might be identified as the small-town or country Rambler dealer who first became associated with a successor corporation of the defendant in the year 1945 and continued such relationship until 1954 when the company that he originally represented, the Nash Kelvinator Corporation and its sales subsidiary, merged with the Hudson Motor Car Company to form the American Motors Corporation.

This dealer of small vintage continued to represent the predecessor corporation selling Nash automobiles until and shortly beyond the fall of 1957 when the Hudson and Nash automobiles were replaced by the Rambler.

In the interim, American Motors Corporation, the producer of the automobile sold by the defendant, secured new and fresh blood, more capable and dynamic personnel to administer its affairs and to manufacture, produce and sell the Rambler automobile. The injection of this new blood and the formulation of extraordinary sales techniques lifted the corporation from its lowest ebb of obscurity to a position of great prominence and success in the automobile industry.

To accomplish this objective, the corporation underwent drastic modification in all branches of activity launching a militant sales campaign of dimensions unprecedented since its existence. New policies were enforced, regulations and procedures were radically altered in order that the modernization of an old, unsuccessful automotive producer could be made appealing to the public in the competitive field of automobiles of a similar type and cost.

Thus, when questioned as to the approach which was made to old dealers as evaluated with new dealers, one of the executives of defendant said in substance: We prefer that our dealers be modern in every respect, both as to plant facilities, sales, used cars and all aspects of presenting the Rambler to the public. But with old dealers, we realize that they have their investment and capital in locations and with plant facilities that do not meet the requirements that we prefer, but we try to have them administer and carry out their franchises by making modifications and changes in order to bring their business as close as possible to what is required of a new franchise dealer.

Reduced to its simplest aspects, plaintiff was a dealer who, for more than thirteen years, faithfully represented the defendant and its predecessor companies, having developed a regular clientele who would purchase new cars from him as occasion would permit, extending his every effort to make his business a success within his limitations. He was the chief executive officer, head salesman and repairman, enlisting regular customers to act as part-time salesmen who, in turn, would bring their friends to the dealership. He devotedly tried to comply with the modernization requirements of the defendant, employing bookkeepers or so-called accountants to formulate reports that were required, but was unable to meet the technical and detailed directives and exigencies of this mushrooming automobile manufacturer.

I am satisfied that evidence exists in the record which would justify the jury in concluding from the evidence and the inferences deducible therefrom that the defendant did intimidate or endeavor to intimidate or did coerce or endeavor to coerce the plaintiff franchise dealer in violation of the Automobile Dealers Franchise Act.

I am satisfied that substantial evidence exists in the record to conclude that the plaintiff dealer acted in good faith or

in the best of faith to comply with all directives issued to him and that, as a corollary thereto, plaintiff did not act in bad faith justifying termination of his franchise.

Substantial reasonable inferences may be drawn from the evidence that the non-renewal of the plaintiff's franchise was due to the fact that, for reasons personal to the defendant, it did not desire a small-town dealer such as the plaintiff to continue to represent this modernized and up-to-date company, that in the stampede for success defendant intimidated and coerced the plaintiff into complying with its then newly formulated directives while, had the defendant applied a persuasive and understanding approach to the problems of the plaintiff, he undoubtedly would still remain as a representative of the defendant company.

## III. DAMAGES

Evidence was adduced at trial from which the jury could have inferred that plaintiff suffered a loss of $4,000.00 in accumulated parts, $7,000.00 in equipment, $10,000.00 in good will and $1,500.-00 for which plaintiff was obligated on his lease as the result of the arbitrary termination of his franchise. It was further developed that plaintiff had orders for five automobiles at the termination of his franchise and that a reasonable projection into the future, recognizing the considerable impact that the Rambler had upon the automobile market generally, could well anticipate a sale of at least sixty automobiles within a year. This conclusion is buttressed by the fact that plaintiff earned $3,000.00 profit in the two months that his franchise was effective in 1959.

■ The plaintiff was not required to show with exactitude the precise sum that he lost since such an exact computation is not feasible. The jury may make a just and reasonable estimate of the damage based on relevant data. In such circumstances, where defendant by its own wrong was prevented a more precise computation, the jury is allowed to act on probable and inferential as well as direct and positive proof. Bigelow v. R.K.O. Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652.

■ The Court is not free to reweigh the evidence and set aside the jury's verdict merely because the jury could have drawn different inferences or conclusions, or because the Court regards another result as more reasonable. Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Masterson v. Pennsylvania Railroad Co., 182 F.2d 793 (3rd Cir.); Thomas v. Conemaugh & Black Lick Railroad Co., 234 F.2d 429 (3rd Cir.).

■ Based upon the entire record, I am compelled to conclude that the jury had sufficient evidence and inferences deducible therefrom upon which to predicate an award of $20,000.00 for the period from March 2, 1959 through March 2, 1960.

## MOTION FOR NEW TRIAL
## I. MORTALITY TABLES

■ A study of the legislative history of this act reveals that the intention of Congress was directed at correcting the abuse of economic power which had been wielded by the automobile manufacturers, B. T. Woodard et al. v. General Motors Corp., 5 Cir., 298 F.2d 121. No basis exists to construe the statute as limiting damages to a single year, and it was with the view to aid the jury in having a basis to estimate the potential life span of the plaintiff, should the jury have believed that in the normal course of events the franchise would have been renewed throughout his life, that the United States Mortality Tables were admitted.

■ Nevertheless, even if the Court were wrong in this respect, no prejudicial error could have resulted since the jury confined damages solely to one year following the termination of the franchise, and the introduction of the Mortality Tables would, at worst, constitute mere surplusage.

## II. POINTS FOR CHARGE

■ The Court refused to charge in the precise language of defendant's requested points for charge 5, 6, 7, 9, 11, 12, 13, 14, 15, 16, 18, 19 and 21 for the

reason that defendant's points sought judicial sanction to statements which involved a discussion of factual data containing an expression of opinion as to conclusions and inferences which the jury was required to accept from the facts related. In the sixteen years that I have served as a United States District Court judge, I have never made it my practice to discuss the facts with the jury, believing as I do that a discussion of the facts on the part of a judge, either by intonation or emphasis, may cause jurors to conclude that the trial judge harbors certain beliefs as to the weight that different facets of the evidence should be given. It is my belief that in the interest of strict impartiality, the weight and inferences deducible from the evidence are solely the province of the jury which the Court in no way should preempt and must exercise extraordinary caution to prevent the great influence which a jurist necessarily wields from being misconstrued by jurors.

In point 24 there is an implication that a jury may not make an approximation of damages based on future profits which are not ascertainable in definite and precise amounts. In this connection, the law indicates that where substantial damages are proved, the impossibility of proving precise limits is no reason to deny substantial damages, 25 C.J.S. Damages § 90; Restatement of Contracts, Sec. 331.

Defendant's point 27 for deduction from damages of any earnings that plaintiff had from any other employment or business or any earnings he reasonably would have had if he had diligently sought or undertaken other employment for which he was suited for the years in question is not maintainable under any construction of the act and appears to be contrary to the tenor and purport of the act.

It is further noteworthy that numerous phases and aspects of defendant's points for charge were most thoroughly covered in the Court's instructions to the jury. In this respect, the law is well settled that refusal of requested points for charge does not constitute error where the substance thereof is adequately embraced in the trial court's charge to the jury. United States v. Riggi, 256 F.2d 57, (3rd Cir.).

I have considered the remaining contentions of the defendant and find them so wholly lacking in merit as to require no discussion.

III. WEIGHT OF EVIDENCE

In the exercise of my judicial discretion, upon re-examination and meticulous review of the record, viewing the verdict in the overall setting of the trial and considering the character of the evidence and the legal principles which the jury was bound to apply to the facts, it is incumbent upon me to abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result, Lind v. Schenley Industries, Inc., 278 F.2d 79 (3rd Cir.). Substantial evidence exists in the record to support the verdict of the jury.

Motion for judgment notwithstanding the verdict and/or new trial will be refused.

An appropriate order is entered.