**FELIX A. RODRIGUEZ, INC., Plaintiff,**

v.

**BRISTOL-MYERS COMPANY,
Defendant.**

No. 847–67.

United States District Court
D. Puerto Rico.

Feb. 13, 1968.

Lino J. Saldaña and Arturo Estrella, San Juan, P. R., for plaintiff.

McConnell, Valdés, Kelley & Sifre, San Juan, P. R., for defendant.

MEMORANDUM OPINION *

FERNANDEZ-BADILLO, District Judge.

On December 15, 1967, plaintiff, Félix A. Rodríguez, Inc., filed an action against the defendant, Bristol-Myers Co., upon a

* Chief Judge Cancio wishes to announce that he agrees with this Opinion.

sworn complaint alleging defendant's breach of Law No. 75 of 1964, as amended (10 LPRA § 278 et seq.), (hereinafter referred to as the Act). Plaintiff simultaneously requested an order directed to the defendant to show cause why a preliminary injunction should not issue in this case.

The matter now before the Court is plaintiff's prayer that an injunction issue. At this juncture in the proceedings the Court in no way wishes to make a finding or rule upon the ultimate liability of defendant, if any; a short statement of the relevant facts at the outset will serve as a basis for orientation.

In its complaint plaintiff alleges that it was appointed an exclusive distributor for defendant within the Commonwealth of Puerto Rico in 1946. Since that time, the original contract, evidenced by letters of agreement, has been amended from time to time. By letter dated November 15, 1967, and signed by one of its officials, defendant gave notice to plaintiff that the contract then existing between the parties was to be terminated as of January 20, 1968. In the verified complaint above mentioned, plaintiff seeks damages in the amount of $375,000, and prays for the issuance of a preliminary injunction prohibiting defendant from having the proposed cancellation of the dealership contract take effect unless and until plaintiff has been compensated for all damages subject to be indemnified pursuant to the Act. Service of process upon the defendant was executed in accordance with Rule 4.7 of the Rules of Civil Procedure of Puerto Rico, 32 LPRA, App. II, R. 4.7, the Commonwealth's so-called "long-arm" statute.

An Order to show cause was signed by the Court on December 15, 1967, and issue was joined as to the injunction on January 12, 1968. During the pendency of this question the letter of notice of termination was amended so that the termination is to become effective as of February 14, 1968.

At the outset, the Court must deal with the question of its jurisdiction over the person of the defendant. The defendant, a foreign corporation not qualified to do business within the Commonwealth, has questioned jurisdiction based upon the claim that it does not "carry out business transactions within Puerto Rico" and that it has not executed a tortious act within Puerto Rico, within the meaning of the "long-arm" statute. It relies heavily upon certain cases from other jurisdictions, e. g., Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E. 2d 159 (1966); Standard Wine & Liquor Co. v. Bombay Spirits Co., 20 N.Y.2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 458, 261 N.Y.S.2d 8, 19, 209 N.E.2d 68 (1965). It appears that the procedural requirements of Rule 4.7 have been met by plaintiff, so we may proceed to an examination of its substantive provisions, where relevant:

"4.7 Substitute service.

(a) Where the person to be served is not within Puerto Rico, the General Court of Justice of Puerto Rico shall have personal jurisdiction over said non-resident as if he were a resident of the Commonwealth of Puerto Rico, if the action or claim arises as a result of the following:

(1) Such person or his agent carries out business transactions within Puerto Rico; or

(2) Executes by himself or through his agent, tortious acts within Puerto Rico; * * * "

The Court is satisfied that jurisdiction over the defendant has been adequately established, in accordance with prior decisions of this Court. Executive Air Services, Inc. v. Beech Aircraft Corp., 254 F.Supp. 415 (D.C.P.R. 1966); La Electronica, Inc. v. Electric Storage Battery Co., 260 F.Supp. 915 (D.C.P.R. 1966); Caribbean Sales Associates, Inc. v. Hayes Industries, Inc., 273 F.Supp.

598 (D.C.P.R. 1967) [1]; Coletti v. Ovaltine Food Products, 274 F.Supp. 719 (D.C.P.R. 1967). Subject matter jurisdiction is had under the provisions of 48 U.S.C. § 863, the special diversity jurisdiction statute applicable to this Court. See Ritchie v. Heftler Construction Co. of Puerto Rico, Inc., 367 F.2d 358 (1st Cir. 1966); Luce & Co. v. Alimentos Borinqueños, 276 F.Supp. 94, Order of November 3, 1967 (D.C.P.R).

██ The issue posed by plaintiff's prayer for preliminary injunction in aid of its action based upon the Act is not easily answered. There can be no questioning of this Court's inherent equity power to make such relief available under proper circumstances, (Bateman v. Ford Motor Co., 302 F.2d 63 [3rd Cir. 1962]), but it is equally clear that the power to grant the extraordinary remedy of injunction should be exercised with great caution. Barker Painting Co. v. Brotherhood of Painters, etc., 15 F.2d 16, 18 (3rd Cir. 1926); Goldammer v. Fay, 326 F.2d 268, 270 (10th Cir. 1964). Applicable principles of law and their relationship to the particular fact situation must be shown to coincide, particularly where a mandatory injunction is sought. O'Malley v. Chrysler Corp., 160 F.2d 35, 36 (7th Cir. 1947).

The Commonwealth of Puerto Rico combines in its juridical system the Civil Law tradition of the continent and elements of the Anglo-Saxon Common Law. There is no doubt that the former is still the predominant force, and this Court has always striven to be guided by its principles. This is particularly true in those cases where subject matter jurisdiction is based upon diversity of citizenship. It thus is appropriate to examine and review the laws of Puerto Rico in this regard.

Section 3524 of Title 32, LPRA, reads in part as follows:

"An injunction or restraining order cannot be granted:

(1) * * *

(2) * * *

(3) * * *

(4) to restrain the breach of a contract a compliance with which would not be specifically required."

This section of Title 32 is presently in force. (See Rule 72(1) of the Rules of Civil Procedure of 1958 for the General Court of Justice, 32 LPRA, App. II, R. 72).

The question presented by plaintiff's request for an injunction to restrain the termination can thus be considered to present a second and more fundamental issue: Can specific performance of the distribution contract here in issue be required? See San Juan Racing & Sporting Club v. Foote, 31 P.R.R. 154, 158 (1922).

Article 1077 of the Civil Code of Puerto Rico, 1930 ed., 31 LPRA 3052, provides in part as follows:

"The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him.

The person prejudiced may choose between exacting the fulfilment of the obligation or its recission, with indemnity for damages and payment of interest in either case. He may also demand the recission, even after having requested its fulfilment, should the latter appear impossible."

This Article aptly evidences one of the fundamental differences in approach between the Civil Law and the Common Law. See Szladits, The Concept of Specific Performance in Civil Law, 4 American Journal of Comparative Law, 208 (1955). At Common Law, as was succinctly put by Judge Will in a case involving the Federal Automobile Dealers-Day-in-Court Act, 15 U.S.C. §§ 1221–1225:

"(7) Two elemental propositions of law are here involved, first, that courts will not enjoin a breach of contract if

1. cf. other matters in the same case, Hayes Industries Inc. v. Caribbean Sales

Associates, Inc., 387 F.2d 498 (1st Cir.) decided January 10, 1968.

money damages can adequately compensate the injured party; second, that a court of equity has power to enjoin such a breach if money damages will be impossible to calculate or will not constitute adequate compensation. The applicable criterion then is: can money damages which would adequately compensate plaintiffs be here computed?" Madsen v. Chrysler Corp., 261 F.Supp. 488, 507 (N.D.Ill. 1966); vac. as moot, 375 F.2d 773 7th Cir. 1967).

The Supreme Court of Puerto Rico, in applying and discussing the above quoted Article 1077, has summarized the Civil Law approach as follows:

"Under the civil law—contrary to the common law—the fact that a plaintiff who alleges a breach of contract has an adequate remedy by way of damages does not bar him from seeking performance of the contract. The plaintiff ' * * * may choose between exacting and fulfilment of the obligation or its rescission, with indemnity for damages * * * '. Section 1077, Civil Code, 1930 ed., 31 LPRA § 3052; § 1340 of the Civil Code, 31 LPRA § 3747; * * * But although the adequacy of the remedy of damages plays no role under our law, §§ 1077 and 1340 of the Civil Code do not create an automatic and absolute right to performance of a contract in all cases." Vázquez v. Superior Court, 78 P.R.R. 707, 712 (1955).

█ The Civil Law thus contains the general rule that specific performance of contracts will be granted:

"It is a basic principle of modern civil law systems that the promissor is obligated to perform his duty under the contractual obligation and, in the case of a breach, the promisee has the right to enforce this duty, while it is possible and conscionable. The idea that in the case of breach the promissor's primary obligation of performance is transformed into a secondary obligation to compensate the promisee by payment of damages is absent from civil law." Szladits, supra, at 212–213.

It would therefore appear that unless an applicable exception is found to this rule, the restriction imposed upon the issuance of an injunction by Section 3524 of Title 32, L.P.R.A., supra, is not an impediment to plaintiff's prayer.

The Civil Law generally divides obligations into two main groups: Obligations to give (in Spanish "dar" or "entregar", in French "de donner") and obligations to do or to abstain ("hacer o no hacer", "de faire ou de ne pas faire").[2] In the former, the granting of specific performance is very much in accord with the general rule, a tendency which can be compared with the Common Law's rule concerning specific performance of a contract to sell or deliver real property.

Obligations in the second major grouping are subdivided in accordance with their particular facts. For example, an *obligation to "abstain"* ("de no hacer") may well be specifically enforced, for it requires only an initial order and forces no continued course of dealings. Obligations to "do" ("hacer") will not be specifically enforced *if* "the contract is impossible to perform or, with rare exceptions, where personal services are required. See Szladits, supra; Nuñez v. Soto Nussa, D.J., 14 P.R.R. 190; * * " Vázquez v. Superior Court, supra, at 712.

This summary analysis shows that the question before the Court must be resolved by determining the nature of the distribution contract involved: is it an obligation to "give", to "do", or to "abstain", and does it involve elements that would be considered to be "personalisimo"?

In the opinion of this Court, this is a contract to "do" ("de hacer"), which

2. Puerto Rico Civil Code, 1930 § 1041 (31 LPRA, § 2991) reads:

"Every obligation consists in giving, doing or not doing something."

predominantly involves reciprocal personal elements and makes a close cooperation between the parties critical. On the one hand, a distributor must be concerned with the continued good name of his principal, as well as with his relationship as regards the principal in terms of credit, mutual cooperation, etc. The manufacturer or principal, however, must likewise maintain a keen interest in the personal integrity, reputation and efficiency of a distributor's standing in the community, etc. Both parties must be constantly vigilant of each other's integrity, good faith and close cooperation, and supervision ought to be a prolonged and continuous one. These elements of riciprocal personal dealings are accentuated in a case where the distributor is an exclusive representative, as it is alleged in the complaint that plaintiff here is.[3]

This Court is therefore of the opinion that the extraordinary injunctive relief now being sought by plaintiff would be denied under strict Civil Law principles. It is revealing to note that a similar result could be reached by Common Law courts when dealing with contracts requiring a series of successive acts whose performance cannot be consummated easily. See San Juan Racing & Sporting Club v. Foote, supra, at 159–160 for a discussion by the Supreme Court of Puerto Rico; cf. Bethlehem Engineering Export Co. v. Christie, 105 F.2d 933, 125 A.L.R. 1441 (2nd Cir. 1939).

A further consideration involved in this case is the nature of the Act relied upon by plaintiff in its complaint: Can there be discerned a legislative intent to make available to distributors the remedy of specific performance or equitable relief in the form of injunctions? In this respect the Court is hampered by the fact that there exist no interpretations of the Act by the Supreme Court of Puerto Rico. This appears to be a novel question. The Act does contain, however, a detailed damages provision (10 LPRA 278b) [4], which

3. In defining the "just cause" which Section 2 of the Law (10 LPRA § 278a), as amended, considers as the principal's only basis for termination of contract, Section 1(d) provides:

"(d) just cause: nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." 10 LPRA, § 278(d), as amended.

The wording of this provision evidently suggests personal dealings and relationships between the parties which are critical and important.

4. Section 3 of the Act, as amended, provides:

"If no just cause exists for the termination of the dealer's contract for detriment of the established relationship, or for the refusal to renew same, the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused him, the amount of such indemnity to be fixed on the basis of the following factors:

(a) the actual value of the amount expended by the dealer in the acquisition and fitting of premises, equipment, installations, furniture and utensils, to the extent that these are not easily and reasonably useful to any other activity in which the dealer is normally engaged;

(b) the cost of the goods, parts, pieces, accessories and utensils that the dealer may have in stock, and from whose sale or exploitation he is unable to benefit;

(c) the good will of the business, or such part thereof attributable to the distribution of the merchandise or to the rendering of the pertinent services, said good will to be determined by taking into consideration the following factors:

(1) number of years the dealer has had charge of the distribution;

(2) actual volume of the distribution of the merchandise or the rendering of the pertinent services and the proportion it represents in the dealer's business;

(3) proportion of the Puerto Rican market said volume represents;

(4) any other factor that may help establish equitably the amount of said good will;

sets forth with apparent care the nature of the indemnification to be recovered by a distributor in the event that a breach of the statute is proved. The Court can find no indication that specific performance of distribution contracts was contemplated, and no indication that the legislative intent included injunctive relief.

Plaintiff has relied heavily, during oral argument and in its brief, upon two cases arising under the Federal Automobile Dealer-Day-in-Court Act, 15 U.S. C. §§ 1221–1125,: Bateman v. Ford Motor Co., 302 F.2d 63 (3rd Cir. 1962), and Dahlberg Brothers, Inc. v. Ford Motor Co., 272 Minn. 264, 137 N.W.2d 314 (1965). These cases, and the line of authority which they represent, are distinguishable, because they arise under a substantially different statute and because they deal with a particular type of dealer.

Act No. 75, as noted above, contains a detailed and specific guide as to damages; the Federal Act provides only that an aggrieved automobile dealer may "recover the damages by him sustained and the cost of suit" (15 U.S.C. § 1222). The damages recoverable under Act 75 are principally based upon performance prior to the breach, while under the Federal Act the ordinary Common Law principle of future unearned profits is dominant. See Volkswagen Interamericana, S. A. v. Rohlsen, 360 F.2d 437 (1st Cir. 1966), cert. den. 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143; Garvin v. American Motors Sales Corp., 202 F.Supp. 667 (D.Pa.1962).

Defendant has stated, without contradiction, that Bristol-Myers represents only approximately 20–25% of plaintiff's business volume. In sharp distinction, an automobile dealer normally has a franchise from only one manufacturer. In the event that the latter cancels a franchise agreement, the dealer may be wholly without income for a substantial period of time. In this case, for all that appears plaintiff continues to serve principals which represent the majority of its business.

An automobile dealer must invest substantial amounts of money in physical facilities, advertising and goodwill, which are not readily useful for the sale of automobiles made available by a second manufacturer. The termination of a franchise agreement thus necessarily causes a severe and perhaps total economic dislocation which subjects a dealer to an extensive period of zero income, in addition to having a substantial investment which cannot be easily applied to a second line. In this case, the nature of plaintiff's business is such that it can continue the servicing of other principals with only minor adjustments.

A distinction of a different sort which is equally relevant arises on the side of the manufacturer. In the case of an automobile company, the particular product or automobile is normally well established in the minds of the consumer public such that a period of inactivity will not necessarily affect the manufacturer's market position in any substantial way. The products involved in this case are predominantly low-cost, high-turnover consumer products in a market with a very high degree of elasticity. In other words, if a manufacturer in the position of defendant is to increase, or even maintain a satisfactory market penetration, constant attention must be given to advertising and servicing efficiency. In terms of marketing economics, this means that a market position for this type of product can be maintained and increased only if factors other than the nature of the product itself are at work in favor of the manufactur-

(d) the amount of the profit obtained in the distribution of the merchandise or in the rendering of the services, as the case may be, during the last five years, or if less than five, five times the average of the annual profit obtained during the last five years, whatever they may be."

er. The most important of these is the servicing provided by the distributor.[5]

In light of all these considerations, it is the opinion of this Court that plaintiff's prayer for the issuance of a preliminary injunction should be denied. Defendant has raised other points in opposition to the issuance of the injunction which the Court need not reach.

During proceedings heretofore had in this case, defendant has offered to honor any orders which plaintiff, in its sole discretion, may choose to place with it pending the outcome of the main litigation. Given the voluntary nature of this offer, an order directing any such course of conduct is unnecessary, but it should be made clear that under the terms of the offer as understood by this Court, plaintiff may continue to order from defendant or a subsidiary thereof, at the prices and terms heretofore in effect, subject only to defendant's right to adjust prices in the normal course. In no event, however, is plaintiff to be sold at a price different from that made available to the new distributor to be named by the defendant, and in no event is plaintiff to be forced to purchase from defendant or its subsidiary if it should choose to not avail itself of the offer.

The Court notes in passing that defendant's answer contains a partial affirmative defense to the effect that any profits earned by plaintiff based upon purchase and resale of defendant's products subsequent to the date of termination, now February 14, 1968, represent a set-off to be deducted from the award to plaintiff should any judgment in plaintiff's favor ultimately be rendered. The Court at this time expresses no opinion as to this matter, and wishes to make clear that its discussion of the offer made by defendant is not meant to rule upon it in any way.

5. See Friedrich Kessler, Automobile Dealer Franchises: Vertical Integration by Contract, 66 Yale Law Journal 1135, 1149, 1187–1188 (1957); Gaetán and De

The findings of fact and conclusions of law contained in this Memorandum Opinion, as supplemented by those appearing below, are considered to be adequate within the meaning of Federal Rule of Civil Procedure 52(a).

### FINDINGS OF FACT

1. Plaintiff, Félix A. Rodríguez, Inc., is a corporation organized under the laws of the Commonwealth of Puerto Rico.

2. Defendant, the Bristol-Myers Company, is a corporation incorporated and existing under the laws of a place other than Puerto Rico.

3. Plaintiff and defendant entered into a distributorship agreement in 1946, for the distribution by plaintiff on an exclusive basis of certain products within Puerto Rico.

4. Notice of intent to terminate the agreement was given by defendant by letter dated November 15, 1967.

5. The agreement is to terminate February 14, 1968.

6. Defendant's products are predominantly low-cost, high-turnover products, which represent approximately 20–25% of plaintiff's annual sales volume.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to 48 USC 863.

2. Jurisdiction over the person of the defendant has been properly obtained.

3. The Court having balanced the equities of the parties, concludes that the plaintiff is not entitled to the extraordinary remedy of a preliminary mandatory injunction.

4. Under all of the circumstances, plaintiff's application for a preliminary injunction must be denied.

It is so ordered.

Jesús Schuck, En Torno a la Ley Número 75 del 24 de Junio de 1964, XXXIV University of Puerto Rico Law Review 497, 509–514 (1965).