**MIXING EQUIPMENT CO., Inc.**

v.

**PHILADELPHIA GEAR, INC., Appellant, and George Leamy.**

**Appeal of George LEAMY.**

**Nos. 18737, 18738.**

United States Court of Appeals, Third Circuit.

Argued Oct. 23, 1970.

Decided Jan. 11, 1971.

Rehearing Denied March 10, 1971.

Edwin B. Barnett, Strong, Barnett & Grasberger, Philadelphia, Pa., for appellants.

John B. McCrory, Nixon, Hargrave, Devans & Doyle, Rochester, N. Y. (Bancroft D. Haviland, Michael R. Gardner, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Pennsylvania granting appellee's motion for a preliminary injunction.

Appellee, Mixing Equipment Company, Inc. (Mixco), a New York corporation whose principal place of business is Rochester, New York, is a designer, manufacturer and seller of industrial mixing equipment. Appellant Philadelphia Gear, Inc. (Philadelphia Gear) is a Pennsylvania corporation, having its principal place of business in King of Prussia, Pennsylvania. It is a multi-faceted corporation and one of its major lines is industrial mixers, in which field it is one of Mixco's two principal competitors. Appellant George Leamy was employed by Mixco as an application engineer, i. e., an engineer dealing with problems of mixing technology, from March, 1965 until July, 1969. Shortly after his employment commenced, he executed an agreement which contained, inter alia, the following covenant:

"I also agree that I will never disclose or authorize anyone else to disclose without first getting written permission from the Company, any confidential information about the Company, its plans, its products, or its operations.

"I hereby agree that, during my employment and for one year after, I will not disclose or authorize anyone else to disclose, without first getting written permission from the Company, any information concerning the Company's plans, business or products except as is necessary in the ordinary course of the Company's business, even though such or similar information may have been made public before.

"I hereby further agree that, during my employment by the Company and for one year thereafter, I shall not, either as principal, agent, consultant, employee, partner or in any other capacity, engage in any work or other activity in the field or fields in which I have worked or shall work for the Company, and I shall not engage in any work or other activity in any way connected with the development, manufacture or sale of any product which competes with any product of the Company made or sold either during the term of my employment or within one year thereafter."

Leamy voluntarily left Mixco on or about July 4, 1969 and on July 7, 1969 he commenced employment with Philadelphia Gear as an application engineer. He was subsequently elevated to the position of technical director of Philadelphia Gear's mixing division. In November of 1969, Mixco discovered that Leamy was working in a competitive position. This suit was commenced shortly thereafter. The complaint sought, inter alia, injunctive relief and damages and was accompanied by a motion for a preliminary injunction.

A hearing was held in the district court, after which Judge Body made findings of fact and concluded that a preliminary injunction should issue. 312 F.Supp. 1269. A brief factual recital, incorporating the findings of the district court, will be helpful.

Mixco has been engaged in the business of designing, manufacturing and selling industrial mixing equipment since 1923. It is the acknowledged leader in this industry, having a share of the market estimated between 40 and 60 per cent. As a result of its activities in the field, Mixco has established a valuable and extensive trade name and goodwill for itself and its product. Much of Mixco's business involves the selection of mixing equipment to meet the specific needs of particular customers. Engineering design and manufacturing processes for much of this equipment, in the form of information, plans, specifications, drawings and models, tables, charts and other related materials have been developed at great expense to Mixco and are confidential and secret. This material is known by Mixco's employees and former employees to be of a confidential nature. It is contained, for the most part, in four technical refer-

ence books[1] and voluminous files developed for the use of Mixco's application engineers and other employees who have need of using this technical information. Mixco takes certain stringent precautions to insure the confidentiality of this data and the covenant previously noted is utilized by the corporation to prevent competitors from gaining access to this material.

When Leamy commenced his employment with Mixco, he had no prior experience in the industrial mixing field although he did have a general engineering background. He was formally trained for application engineering by Mixco for a six month period, after which he received additional on-the-job training. In connection with his employment by Mixco, Leamy had access to and utilized confidential materials developed by the corporation, with knowledge that such material was to be kept confidential and secret.

In the Spring of 1969, Leamy decided to leave the Rochester area and registered with several employment agencies. As a result he was put in touch with Philadelphia Gear. He had several interviews and was subsequently offered a position, as an application engineer in the Mixer Division. Prior to terminating his employment with Mixco, Leamy indicated to his superiors that he would be employed in Philadelphia Gear's Limitorque Division, which was engaged in the design and manufacture of valve control devices and did not compete with Mixco. In November, 1969 an employee of Mixco saw a Philadelphia Gear catalog at the Hercules plant in Hopewell, Virginia and, attached thereto, a card stating that Leamy, formerly of Mixco, was now with Philadelphia Gear. Subsequently, it was verified that Leamy was in fact working as an application engineer. In that capacity, Leamy had authored a sales presentation to Squibb Pharmaceutical, a known customer of Mixco, which resulted in a contract between Squibb and Philadelphia Gear.

The court below found that Leamy's conduct was false and deceptive and further found that Leamy had violated his agreement with Mixco in that he (a) worked for Philadelphia Gear in the field of application engineering and in connection with equipment directly competitive with Mixco; (b) approached known customers of Mixco on behalf of Philadelphia Gear; (c) disclosed confidential information of Mixco; and (d) copied or utilized Mixco's confidential designs, etc. on behalf of Philadelphia Gear.[2]

With regard to Philadelphia Gear, the court found that it employed Leamy as an application engineer because of his experience with Mixco and with knowledge of his prior employment and of facts putting it on notice of the agreement between Mixco and Leamy. It further found that Philadelphia Gear induced Leamy to violate his agreement and has conspired with him to secure for its own profit confidential information which was the property of Mixco, and that these acts constituted improper and unlawful competition. The court further found that Mixco had no adequate remedy at law to protect itself from appellants' violation of its rights and that Mixco was being subjected to irreparable harm, past, present and future. The court, therefore, entered

1. The four reference books were referred to as the Sales Data Book, the Technical Reference Book, The Waste and Water Treatment Book and the Application Engineers Reference Book.

2. The copying and disclosure referred to by the district court was made in connection with the sales presentation to Squibb. That presentation consisted of copies of charts and graphs prepared by Dr. James T. Oldshue, Mixco's Technical Director, which Leamy admitted having taken with him when he resigned from Mixco. Those charts and graphs cannot be considered trade secrets because they were published in trade journals. Nevertheless, Leamy's conduct indicates that when he left Mixco, he consciously intended to utilize material developed by Mixco personnel and taken from Mixco files.

**1312**

an order preliminarily enjoining George Leamy from

a) directly or indirectly continuing in the employ of Philadelphia Gear;

b) directly or indirectly accepting employment from any other person or concern in any work, activity or capacity involving mixing equipment, including, but not limited to the designing, engineering, production or sale of mixing equipment; and

c) directly or indirectly conspiring or agreeing with Philadelphia Gear to breach the contract between Mixco and Leamy.

Philadelphia Gear was preliminarily enjoined from

a) directly or indirectly continuing Leamy in its employ;

b) directly or indirectly inducing Leamy or conspiring or agreeing with him, to engage in any activity in breach of his contract with Mixco.

Both Leamy and Philadelphia Gear were also enjoined from directly or indirectly securing or utilizing any trade secrets, confidential or proprietary information of Mixco and from competing unlawfully with Mixco. A bond was ordered posted in the amount of $12,000. This Court on March 23, 1970 granted appellant's motion for supersedeas staying, pending appeal, those portions of the injunction dealing with Leamy's employment with Philadelphia Gear but at the same time suspended the running of the period of one year fixed in the covenant not to engage in competitive employment.

We are urged to vacate the injunction and discharge the bond. Appellants argue that the covenant not to compete is unenforceable and that the court below abused its discretion in granting preliminary injunction in light of the facts presented.

■ The threshold question, of course, is the validity of the covenant not to compete, for if the covenant is found to be invalid, the district court erred in enforcing it through a preliminary injunction. That court properly applied New York law to determine the validity of the covenant in issue. The covenant was not a separate contract. It was part and parcel of an employment agreement, entered into between a person then residing in New York and a New York corporation, relating to employment in New York state. The execution of the covenant was in consideration of and ancillary to Leamy's employment by Mixco. Applying the choice of law rule of the forum state, Pennsylvania, it clearly appears that New York state is both the place of contracting, Crawford v. Manhattan Life Insurance Co., 208 Pa.Super. 150, 221 A.2d 877 (1966); Boase v. Lee Rubber & Tire Co., 437 F.2d 527 (3 Cir. 1970), and the "center of gravity", the state having the most significant interest in the issue of validity and that its substantive law should be applied. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Certified Laboratories of Texas, Inc. v. Rubinson, 303 F.Supp. 1014 (E.D.Pa.1969); Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964).

■ Under New York law, a covenant not to compete with a former employer, entered into incidental to and as a condition of employment, will be enforced only if it is reasonable—i. e. sufficiently limited as to duration and territorial scope—and if it is necessary to prevent the employee's use or disclosure of the former employer's trade secrets, processes or formulae, or his solicitation of, or disclosure of any information concerning the employer's customers, or if the employee's services can be considered "special, unique or extraordinary." Purchasing Associates v. Weitz, 13 N.Y.2d 267, 246 N.Y.S.2d 600, 196 N.E.2d 245 (1963); Lifetime Stainless Steel Corp. v. Blalock, 33 A.D. 2d 976, 307 N.Y.S.2d 387 (App.Div. 1970); Frederick Chusid & Company v.

Marshall Leeman & Co., 279 F.Supp. 913 (S.D.N.Y.1968).

Beyond all doubt the covenant executed by Leamy was ancillary to and in consideration of employment. The fact that it was actually signed three days after the employment commenced is of no moment because Leamy's application for employment stated that "employment, if offered, is contingent on" the agreement being signed. Obviously the covenant was not an afterthought but an integral condition of employment. See National Chemsearch Corp. of New York, Inc. v. Bogatin, 233 F.Supp. 802 (E.D.Pa.1964), vacated on other grounds, 349 F.2d 363 (3 Cir. 1965).

We agree with the district court's dismissal of any contention that Leamy's services can be considered "special, unique or extraordinary" under New York law. Prior to leaving Mixco, Leamy was the eighth in rank in a department of fifteen engineers. The evidence adduced below would warrant a conclusion that his services were not of such a character as to make his replacement impossible or even difficult, despite the fact that he had developed proficiency in the field. Purchasing Associates v. Weitz, supra; Frederick Chusid & Company v. Marshall Leeman & Co., supra. Nor is it urged on this appeal that any confidential customer lists are in any way involved. Thus, the covenant in question is valid only if it is reasonable and necessary to protect the trade secrets, processes or formulae of the former employer.

The court below found that these requirements were met. In doing so reliance was placed on the definition of a trade secret contained in the Restatement, Torts, § 757(b) (1939), to wit,

"any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. * * * It differs from other secret information in a business * * in that it is not simply information as to single or ephemeral events in the conduct of the business. * * * A trade secret is a process or device for continuous use in the operation of the business.

\* \* \* \* \* \*

"It is not requisite that only the proprietor of the business know it. He may, without losing his protection communicate it to employees involved in its use. He may likewise communicate it to others pledged to secrecy. * * * Nevertheless, a substantial element of secrecy must exist, so that, except by the use of improper means, there would be difficulty in acquiring the information." [3]

This definition has been accepted and utilized by the courts of New York. A. H. Emery Co. v. Marcan Products Corp., 389 F.2d 11 (2 Cir. 1968); Minnesota Mining & Manufacturing Co. v. Technical Tape Corp., 23 Misc.2d 671, 192 N.Y.S.2d 102 (Sup.Ct.1959); Ferranti Electric, Inc. v. Harwood, 43 Misc.2d 533, 251 N.Y.S.2d 612 (Sup.Ct.1964).

Appellants argue that there was no showing of a specific trade secret. However, this argument fails to take into consideration the fact that we are not here dealing with a single process or

3. The Restatement goes on to list some factors to be considered in determining whether given information can be considered a trade secret. They are
"(1) the extent to which the information is known outside his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others."
Great reliance was placed on these factors in Ferranti Electric, Inc. v. Harwood, 43 Misc.2d 533, 251 N.Y.S.2d 612 (Sup.Ct. 1964).

formula or even one mechanical device which gives Mixco a competitive advantage. Mixco's standing in the industry is attributable to its proficiency at analyzing the various problems presented by its customers and designing equipment capable of producing the desired results. This ability, while dependent in part upon certain scientific and mechanical relationships known throughout the industry, in the main is based upon experience in the field. That experience, which has been acquired by Mixco during its 50 years of operation, is recorded in the form of graphs, charts, drawings, and other data sheets and compiled in the several reference volumes previously referred to.

While it is true that the district court did not have these books before it for examination, there was sufficient testimony concerning their contents to warrant the conclusion that trade secret status should be accorded them. Mr. Harrington, Mixco's Director of Application Engineering gave a detailed description of the contents of the books, and also testified concerning their value and circulation.

The volumes consist of material encompassing prior research and experience of Mixco, not available to the trade, outside of the Mixco organization. Mr. Harrington testified that Mixco considered the material "the basis of our business. It is the know-how that we have to sell. Once this information is given out, it reduces our competitive edge." The material contained in the various volumes had been developed at considerable cost to Mixco and is carefully guarded. Each reference book is numbered and specific numbered volumes are charged out to specific persons. Each volume contains a sheet stating that the information contained therein is confidential. This sheet is signed by the person holding the book, returned to the office and kept on file.

Reference books are only distributed to those who have need of them, such as application engineers, salesmen, officers of the company and to some people in the Engineering and Research and Development Departments. Though the number of volumes in circulation is not small,[4] it must be remembered that Mixco is a nationwide corporation, doing business through a network of independent salesmen, as well as its own employees. Some international business is also done through licensees.

■ The record amply supports the trial court's conclusion that the restrictive covenant was necessary to protect Mixco's trade secrets.

■ We further find that the covenant was sufficiently limited as to time and that the absence of a geographical limitation does not render the covenant unreasonable.[5] See DeLong Corp. v. Lucas, 176 F.Supp. 104 (S.D.N.Y.1959), affirmed, 278 F.2d 804 (2 Cir. 1960), cert. denied, 364 U.S. 833, 81 S.Ct. 71, 5 L.Ed. 2d 58 (1960).

Philadelphia Gear's first contact with Leamy came while he was still employed by Mixco. At that time Leamy indicated that he may have executed a covenant not to compete. Although Philadelphia

4. The testimony indicated that the approximate circulation of the manuals was:
Technical Reference Book—200–250
Sales Data Book—200–300
Waste and Water Treatment Data Book—150
Application Engineering Reference Book—45–50

5. Appellants argue that Mixco compelled hundreds of its employees and independent sales agents to sign restrictive covenants similar to the one at issue and that this widespread use of no-complete agreements having no geographical limitations among non-technical as well as technical employees serves to stifle competition and renders the agreement an illegal restraint of trade. The record does not support this contention. Covenants were signed only by people having technical knowledge, such as application engineers, and others who were capable of appreciating the technical information, such as salesmen and independent sales agents, many of whom had engineering backgrounds, and all of whom were given one or more of the reference volumes.

Gear knew generally of the use of these agreements by Mixco and of their contents through prior dealings, no steps were taken to ascertain whether Leamy had, in fact, executed one. Even when Mixco, through its Executive Vice President and general counsel, contacted Philadelphia Gear concerning Leamy's employment in January of 1970 no steps were taken to remedy the situation. This inaction is attributable to a continuing belief on the part of Philadelphia Gear's executives that the covenants were not enforceable. Indeed, on this appeal, Philadelphia Gear has argued principally that the court below erred in sustaining the covenant's validity. It is virtually conceded that, if the covenant was properly found to be binding, so as to prevent Leamy's employment, Philadelphia Gear's conduct, under the applicable Pennsylvania law, constituted an inducement to breach the covenant. United Aircraft Corp. v. Boreen, 284 F.Supp. 428 (E.D.Pa.1968), affirmed, 413 F.2d 694 (3 Cir. 1969); Jacobson & Co., Inc. v. International Environment Corp., 427 Pa. 439, 235 A.2d 612 (1967); Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177, 207 A.2d 768 (1965); Morgan's Home Equip. Corp. v. Martucci, 390 Pa. 618, 136 A.2d 838 (1957). We affirm Judge Body's finding that Philadelphia Gear's conduct was "integrally related to" Leamy's breach of the covenant not to compete. Albee Homes, Inc. v. Caddie Homes, Inc., supra.[6]

We come now to the propriety of preliminary injunctive relief in the situation presented. As this Court stated in Joseph Bancroft & Sons v. Shelley Knitting Mills, Inc., 268 F.2d 569 (1959), "the granting or denying of a preliminary injunction rests in the sound discretion of the trial court and will not be disturbed upon appeal 'unless contrary to some rule of equity, or the result of an improvident exercise of judicial discretion.'" Where a full hearing has been held and all factual and legal issues relating to liability have been determined in favor of the party seeking injunctive relief, and where the trial court has found a likelihood of irreparable injury pendente lite, a preliminary injunction is an appropriate remedy. Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc., 376 F.2d 543 (3 Cir. 1967); Kontes Glass Co. v. Lab Glass, Inc., 373 F.2d 319 (3 Cir. 1967).

As we see it, however, the order of the district court is too broad in one respect. Paragraph 1(b) of the injunctive order will be modified by eliminating therefrom the language "mixing equipment, including, but not limited to," so that it reads:

> "directly or indirectly accepting employment from any other person or concern in any work, activity or capacity involving the designing, engineering, production or sale of mixing equipment."

The injunctive order will then conform to the restrictive covenant signed by Leamy. As so modified the order of the district court will be affirmed and the order of this Court, staying those portions of the injunction dealing with Leamy's employment with Philadelphia Gear and suspending the running of the one year period,[7] will be vacated.

FREEDMAN, Circuit Judge (dissenting).

I dissent from the affirmance of the preliminary injunction because: (1)

---

6. Metal Lubricants Co. v. Engineered Lubricants Co., 411 F.2d 426 (8 Cir. 1969 and Midland-Ross Corp. v. Yokana, 293 F.2d 411 (3 Cir. 1961) cited by appellants are inapposite. They involve situations in which restrictive covenants had not been utilized by the former employer.

7. The parties are in agreement that Section 1(a) of the preliminary injunction enjoining Leamy from directly or indirectly continuing in the employ of Philadelphia Gear, Inc. has a remaining term of approximately 3½ months.

contrary to the function of a preliminary injunction, it will afford Mixco all the equitable relief it might succeed in obtaining in a final decree; and (2) it is inequitable in the circumstances which surround the parties.

1. The one-year restrictive covenant has only three and one-half months to run. The trial and final decision of the case within that short time is unlikely, indeed inconceivable. Mixco, therefore, will now receive what in fact is complete and final equitable relief, but in the guise of a preliminary injunction whose main function is to preserve the status quo pendente lite.[1]

2. Even if we assume the validity of the restrictive covenant and accept the claim that it was violated, we still must weigh what harm to Mixco will be averted by the continuance of the preliminary injunction for the short period of three and one-half months against the hardship it will impose on Leamy.

What future harm to Mixco will be prevented by the preliminary injunction?

The majority agrees that Leamy's services are not "special, unique or extraordinary" under the governing New York law or of such a character as to make Leamy's replacement unduly difficult. The majority asserts, however, that it is necessary to protect Mixco's trade secrets. The label is impressive, but the content of the so-called trade secrets is obscure. As the majority points out, no special trade secret meriting protection was produced at the hearing. What the majority seeks to protect, however, are those secrets which Leamy would divulge by using his training in the performance of his work. The injunction, therefore, will forbid Leamy from working for three and one-half months in the future in order to prevent him from using his knowledge. But Leamy has already been engaged in precisely such work for the nine months of his employment with Philadelphia Gear prior to the entry of the preliminary injunction and for the additional nine months which have gone by since the preliminary injunction was stayed. The impact upon Mixco of Leamy's continuance in his employment for the short future period of three and one-half months is trifling when compared with the 18 months in which Leamy has already employed the same so-called trade secrets.

I therefore see little, if anything, which Mixco could gain now from a preliminary injunction to run for three and one-half months.

What burden will the preliminary injunction impose on Leamy?

Leamy is an inconspicuous employee enmeshed in what is fundamentally a competitive struggle between the two largest corporations in the mixing equipment business. He has no business of his own. The continuance of the preliminary injunction now will cast him adrift from his job with no assurance of re-employment when the three and one-half months have elapsed. It is not necessary to throw Leamy out of a job in order to afford Mixco relief or even to discourage others in the position of Leamy from violating their restrictive covenants. Any injury which Mixco may have suffered is redressable in the form of damages from both defendants. Mixco also seeks such relief in its complaint.

Weighing, as equity must, the respective elements of advantage and hardship, it seems to me that a court of equity should not stretch out its strong arm to require Leamy to give up his job by a preliminary injunction restraining him from continuing for three and one-half months the same work he has already been doing for 18 months because of what is said to be a violation of a one-year restrictive covenant.

I therefore would terminate the preliminary injunction and remand the case for hearing and decision of the claim for damages.

1. Warner Bros. Pictures v. Gittone, 110 F.2d 292, 293 (3 Cir. 1940).