## Jobson v. Pennsylvania Interscholastic Athletic Association

*Mark A. Ciavarella, Jr.*, for plaintiff.
*Rod J. Pera*, for defendant.

BROMINSKI, *P.J.*, January 8, 1981—This matter comes before the court upon application of Paul D. Jobson, Jr., for a mandatory preliminary injunction, requesting this court to direct the Pennsylvania Interscholastic Athletic Association and Lake-Lehman School District to allow him to participate in the basketball program at the Lake-Lehman School District.

The reason the district committee of the P.I.A.A. advanced for disallowing plaintiff's participation, as above requested, is:

"The District Committee, based on the evidence presented, finds that Paul Jobson, Jr. is emancipated and has established a bona fide residence in Lake-Lehman School District. Also based on the evidence presented, the District Committee finds that his transfer was primarily motivated by athletic purposes. Upon consideration of the intent of the rule and the facts of the case, the Committee declares Paul Jobson ineligible for a period of one year."

This matter was previously before this court wherein plaintiff sought the same relief. At that time plaintiff was disallowed participation because the district committee determined that plaintiff was not emancipated and that the transfer was primarily motivated by athletic purposes.

Defendants properly set forth in their brief the detailed criteria necessary for one to obtain a preliminary injunction:

"A   *Prerequisites for Issuance of a Preliminary Injunction*

The essential prerequisites to the issuance of a preliminary injunction by a Pennsylvania court were set forth in detail by the Supreme Court in

Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177, 181, 207 A. 2d 768 (1965):

1. That it is necessary to prevent immediate and irreparable harm which could not be compensated by damages.

2. That greater injury would result by refusing it than by granting it.

3. That it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct.

4. That the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity.

5. That the plaintiff's right is clear and the wrong is manifest."

As a prologue to the discussion of the several issues, it might be well to set forth Article VI, Section 9 of the By-Laws of the P.I.A.A., which provides:

*"Purpose and Intent of Migration Rules to Control*

Notwithstanding the provisions of Sections 1 through 8 hereof, a District Committee may, after giving notice and an opportunity to be heard to all interested parties, declare any transferring pupil ineligible for a period of time up to one year, if the Committee finds that the transfer was motivated primarily by athletic considerations or if the Committee finds that eligibility would circumvent the intent of the migration regulations, which is to prevent recruiting and transfers for athletic purposes."

Recognizing that there is no suggestion of recruiting violation hinted or otherwise alluded to, the issue before the court is narrowed to whether or not the transfer was effected primarily by athletic considerations and to circumvent the intent of the

migration regulations. Let us then consider the criteria set forth above that plaintiff must establish to warrant the approbation of the court. To do so we must first review the testimony of record which binds us in this matter.

At the very inception of the hearing, it was stipulated by and between counsel that plaintiff was emancipated and a bona fide resident in the Lake-Lehman School District.

The first witness to testify for plaintiff was Roger Bearde, the Assistant Athletic Director and Basketball Coach at Lake-Lehman School District, who testified that he has known of plaintiff for some six years and if he were allowed to participate in the basketball program, he would make the team. Plaintiff is college basketball scholarship material and several college basketball coaches have contacted him to indicate their interest in plaintiff for this reason and, in his opinion, that if he were allowed to play basketball, he would receive a scholarship.

Next to testify was William Lydon, Member and Vice Chairman of the District 2, P.I.A.A. Committee of which Dallas and Lake-Lehman are members, and testified that there are no specific guidelines in the constitution and bylaws of the P.I.A.A. as to what is an athletically motivated transfer, but each case is determined on its own facts.

On cross-examination he testified that the P.I.A.A. consists of 1200-1300 schools and these are broken up into 12 geographic districts. The reason for the migration rule is to place academics first and athletics of secondary importance. The reason why District 2 decided plaintiff's transfer was athletically motivated was that plaintiff's counsel admit-

ted athletics did have an important part in it; that in February, 1980, at a meeting with a counselor at Dallas High School, there was no mention of a transfer; that when he did make the transfer, he did not consult any of the counselors or professionals at Dallas or Lake-Lehman Schools; that his early reason was that he had no respect for the coach at Dallas; that he heard of the courses at Lake-Lehman through a friend. That the hearing on the appeal from the present District 2 P.I.A.A. decision will not take place until February 14, 1981.

On re-direct examination, he testified that while Dallas had a college placement course, it did not have advanced placement courses and that plaintiff was enrolled in two of these courses and doing very well. That P.I.A.A. rules are applied uniformly except as to public and parochial schools but that a parochial migration case was never presented to the P.I.A.A Board.

Paul D. Jobson, Jr., plaintiff, testified that he is a 12th year student at Lake-Lehman High School, having transferred from Dallas High School on June 6, 1980. That he signed up for basketball in October, 1980 and has been allowed to practice with the team but can't play because the P.I.A.A. has declared him ineligible. That he has had letters of interest from Dickinson, Brandeis, Susquehanna and King's Colleges as to a basketball scholarship; that his transfer to Lake-Lehman was not principally motivated by athletics. That Lake-Lehman offered advance placement courses that would exempt one from taking them in one's freshman year in college. These courses are not offered at Dallas High School; that he found out about them from a friend in May of 1980 and obtained a booklet called: "A Quest for Quality at Lake-Lehman" and

that he is presently taking two of the advanced placement courses, English and Calculus.

On cross-examination, he admitted that he did not talk with any counselors at Dallas before making the transfer and that he would have gone to Lake-Lehman even if he had not been eligible for the advanced placement courses. However, he assumed he would be accepted into these courses because he had the prerequisites.

Finally, it was stipulated that if Dr. William Rick, a psychiatrist-psychologist, duly licensed in Pennsylvania, were called to testify, his opinion would be that participating in inter-scholastic athletics has a beneficial effect on participants and that deprivation thereof would cause him harm in the sense of loss of potential scholarship and experience.

Before addressing ourselves to the merits of the case, we must first identify what it is the court is asked to decide. First of all, the court is not requested to reverse the finding of the District 2 Committee that plaintiff's transfer was primarily athletically motivated. From this issue the plaintiff has appealed to the State Board of Control of the P.I.A.A. But that body will not convene to hear that appeal until at least February 14, 1981 and, in the meantime, the official basketball season of the P.I.A.A. has begun, which includes Lake-Lehman School District, and plaintiff is a senior and in his last year of eligibility in high school and thus he is requesting that this court allow him to play basketball at Lake-Lehman High School pending the hearing and the ultimate decision of the State Board of Control.

It should be noted, and this court is in full accord with the principle that ordinarily a court should not interfere with the internal affairs of a body such as

the P.I.A.A., absent fraud, collusion, or conduct that is unreasonable, arbitrary or capricious. None of these elements appears in this case, so the court is confined to considering solely on equitable principles whether plaintiff should be granted a preliminary injunction.

Above all, the courts do not want to become a Super P.I.A.A. Board of Control but it is requested here that we consider plaintiff's prayer for relief and we are obligated to do so.

Turning back to the requisite elements that must be proven by plaintiff to allow his equitable relief. He must show:

"1. That it is necessary to prevent immediate and irreparable harm which could not be compensated by damages."

It is readily apparent that if plaintiff suffers harm, it cannot be compensated by money damages. The term "irreparable harm" is a cornerstone requirement for one seeking equitable relief. Defendants contend that even plaintiff's scholarship potential is too nebulous to fall in this category and cites several cases in this regard. The most significant appears to be Sanders v. La. High School Ath. Asso., 242 So. 2d 19 (La. App. 1970). There the only testimony of irreparable harm was that the football coach would have recommended him for a football scholarship at the conclusion of the season. That is a far cry from the present facts. Except for the intervention of events over which men or women have no control, plaintiff will receive a basketball scholarship if he is allowed to play. From Coach Bearde's testimony as to the present inquiries from colleges and plaintiff's testimony, as well, indicating the receipt of letters of interest from Brandeis,

Dickinson, Susquehanna and King's Colleges, there is nothing speculative about his opportunity.

What happens if the State Board, upon appeal, accepts plaintiff's testimony that his transfer was primarily academically motivated and not athletically motivated? Is this young man not done an injustice that equity can now correct? After all, when this court remanded this case to the District 2 Committee for taking of additional testimony, that Committee had the open-mindedness and integrity to reverse itself on the issue of emancipation and it might well be that their brethren on the State Board will view the present facts differently than they. At the very least it can be said that the State Board will give the matter the same honest and conscientious reflection that the District 2 Committee did.

As this case is examined, it must be acknowledged that it is unique. All of the cases referred to by defendants address themselves to a review of the decisions of the high school regulatory body and usually for reasons of residency, discipline and repetition of grades and that is why it is repeatedly stated by the courts that an individual does not have a constitutional right to participate in interscholastic sports and, hence, deny relief. As will be discussed later, the residency issue is pivotal.

Under these facts, it must be concluded that plaintiff has met this element.

The second element is:

"That greater injury would result by refusing it than by granting it."

On its face, the deprivation of plaintiff to play basketball at this juncture is certainly the greater injury than letting him play.

Defendants suggest that to allow plaintiff to play

would do greater injury because it would defeat their attempt to keep athletics in proper perspective, i.e., secondary to the principal educational process. We do not think this follows. Nothing the court will do here will interfere with the P.I.A.A.'s ultimate decision. It will maintain its regulatory powers. It must be kept in mind that this need not be decided by the State Board to be an attempt by plaintiff to circumvent the migration rule. There are serious facts of record that reveal that although this young man did not consult the professionals, he did in fact succeed in taking the advanced placement courses in English and Calculus at Lake-Lehman High School and is doing very well in them. This, if accepted as true, is his principal reason for transferring to Lake-Lehman. This is not to suggest that athletic consideration played no part in it; to do so would lend a naivete to these proceedings which would beaacceptable to all parties. The issue is what was the primary reason for the transfer and it is not frivolous to state that the State Board of Control might weigh heavily upon this.

Thus we conclude that the greater injury would result by refusing relief than by granting it.

The third is:

"That it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct."

This has no direct application to the factual situation at hand except as will be discussed under the fifth reason.

The fourth element is:

"That the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity."

As stated before, the only function of the court in this matter is to decide if plaintiff is entitled to injunctive relief pending his appeal to the State Board of Control of the P.I.A.A.

The fifth element is:

"That the plaintiff's right is clear and the wrong is manifest."

This issue is by far the most sensitive of all the issues involved herein as established in the leading case of Dallam v. Cumberland Valley School District, 391 F. Supp. 358 (M.D. Pa. 1975):

"5. *Constitutional Law*

"The property interest in education created by the state is participation in the entire process, but the myriad activities which combine to form the educational process cannot be dissected to create hundreds of separate property rights, each cognizable under the Constitution; otherwise, removal from a particular class, dismissal from an athletic team, a club or any extracurricular activity, would each require ultimate satisfaction of procedural due process."

Thus, there is no constitutionally guaranteed right of this plaintiff to play basketball at Lake-Lehman High School.

Where then does he acquire such a right?

As said before, this is a unique case. While the cases referred to in counsel's brief refer to disciplinary and other problems, the vast majority of them deal with residency or transfer or, if you will, migration cases where the controlling body is required to review and either affirm or reverse the issue of whether the residency was established. Here we have a novel situation, for the plaintiff is both emancipated and has established a bona fide residency in the district in which he desires to partici-

pate. Article VI, Sec. 2 of the By-Laws of the P.I.A.A. reads:

"Section 2. Emancipated Students.

An emancipated student whose situation is not otherwise within the terms of this Article shall be *eligible immediately* in the district to which he or she transfers, upon determination by the district committee that he or she has established a *bona fide residence in such district.* In making its determination, the district committee shall be guided by such of the following factors as may be relevant under the circumstances:

1. The address from which the pupil is registered to vote.

2. Payment or liability for payment of municipal and school district taxes.

3. Lease or purchase of a permanent residence.

4. Pupil's address for selective service purposes.

5. Pupil's address for purposes of registration of a motor vehicle.

6. Pupil's address for purposes of motor vehicle operator's license.

7. Pupil's address for automobile insurance purposes.

8. Location of bank accounts.

9. Location of charge accounts.

10. Addresses to which other property is registered.

11. Addresses used for other purposes.

12. Requests or applications for change of relevant addresses and registrations, withdrawal or discontinuance of any such requests or applications, and degree of diligence in pursuing such requests or applications.

13. Source or sources of support for the pupil.

14. Any other relevant factors."

So the district committee has determined that plaintiff is emancipated and a bona fide resident of Lake-Lehman District, making him "eligible immediately." Therefore, he acquires that eligibility by virtue of this section. However, this eligibility is subject to further scrutiny in Section 9, quoted in full, supra, which states that this "eligibility" may be divested if the committee decides that the ". . . transfer was motivated primarily by athletic considerations or if the committee finds that eligibility would circumvent the intent of the migration regulations."

So that while plaintiff may have no constitutional right to participate in the Lake-Lehman program, he had an "eligibility" which was divested because of the District II Committee's ruling.

He, therefore, has met the fifth element required for the granting of a preliminary injunction.

For the reasons set forth above, this court enters the following

## ORDER

It is hereby ordered and decreed that the prayer of plaintiff's petition is granted and plaintiff is permitted to participate in the Lake-Lehman School District's varsity basketball program until his appeal is heard and resolved by the Pennsylvania Interscholastic Athletic Association's State Board of Control.