## Hall v. Hondru

*John M. Elliott, James J. Flaherty,* for plaintiff.
*Paul H. Titus, Bernard D. Marcus, Charles B. Watkins, Mark F. McKenna,* for defendants.

PAPADAKOS, A. *J.*, January 21, 1983—This case is before the court upon request of each party for a preliminary injunction enjoining the other party from interfering with each other's efforts to obtain business as insurance brokers. At the time of hearing on January 19, 1983, it was agreed that the matter would be considered by the court on the basis of depositions entered of record, the pleadings, statement of facts and briefs prepared and filed by counsel.

Following a review of the rather voluminous record, the court invited arguments and heard same on January 21, 1983. Following is the determination of the court.

## FINDINGS OF FACT

1. Plaintiff, Frank B. Hall & Co. of Pennsylvania, Inc. (Hall) is a Delaware corporation with its principal place of business at 2700 INA Building, Philadelphia, Pa.

2. Defendant, Bryan C. Hondru (Hondru) is an individual residing at 2303 Sidgefield Lane, Pittsburgh, Pa.

3. Defendant, Joseph M. Deutsch (Deutsch) is an individual residing at Dan Drive, Pittsburgh, Pa.

4. Defendant, Mark E. Horan (Horan) is an individual residing at 946 Broad Meadow Drive, Pittsburgh, Pa.

5. Defendant, HDH Group, Inc. (HDH) is a Delaware corporation with its principal place of business at One Oxford Center, Pittsburgh, Pa.

6. Hall is engaged in the insurance consulting and brokerage business including the placement of insurance for its clients with various insurance companies and other insurance management ser-

vices, actuarial services and claims administration services.

7. Hall employs a professional sales, operations and management staff as an integral part of its business. Through a substantial expenditure of time, effort and money by Hall and, because of their employment by Hall, members of this staff develop a personal relationship with Hall's clients and accumulate data on the client's needs for the insurance services provided by Hall.

8. As an integral part of its business, Hall has maintained client files relating to the insurance needs of its clients as well as other information and has protected and preserved this client information and files from its competitors.

9. Hondru was hired by Hall in connection with its insurance brokerage business on or about March 23, 1973 as Manager of Employee Benefits, promoted in 1975 to Vice President in charge of Hall's Pittsburgh office, promoted again on or about January 1, 1977 to Senior Vice President and promoted again on or about June 13, 1978 to Executive Vice President of Hall.

10. Hondru served Hall as Executive Vice President for approximately four and one-half years.

11. Deutsch was hired by Hall in connection with its insurance brokerage business on January 1, 1976 and held the position of Vice President and Manager of Property and Casualty Insurance for Hall's Pittsburgh office.

12. Horan was hired by Hall in connection with its insurance brokerage business on March 15, 1976 and held the position of Account Executive and Vice President at Hall's Pittsburgh office.

13. Hondru, Deutsch and Horan left the employ of Hall on December 3, 1982.

14. In the course of their employment by Hall, as a consequence of their positions as officers of the corporation and as senior management employees, certain information was made known to Hondru, Deutsch and Horan, including, but not limited to:

(a.) the identity of Hall's clients;

(b.) the contact person's name and telephone number;

(c.) detailed information on the insurance placed through Hall for clients, including when such insurance coverage would expire;

(d.) detailed information on the insurance needs of Hall's clients;

(e.) prospects for new clients; and

(f.) other corporate opportunities, as well as all the components of Hall's pricing and methods of competing for new business.

15 Hondru was aware that Stephen Cooke and Frank G. Mikan had executed written contracts with Hall and that said contracts contained restrictive covenants.

16. Hondru, Deutsch and Horan, individually and on behalf of HDH, hired Stephen Cooke and Frank G. Mikan with actual knowledge that Cooke and Mikan were avoiding the restrictive covenants in their written contracts of employment with Hall.

17. HDH has hired former employees of Hall.

The foregoing facts are alleged in the complaint and admitted in the answer.

The following findings of fact are made from the depositions taken by both parties and admitted into evidence for the purpose of disposing of the preliminary injunction sought by each of the parties.

18. Cooke and Mikan executed written employment contracts with Hall, as witnessed by Hondru, containing the following restrictive covenant ". . . that for two years after the termination of his em-

ployment, he will not contact, solicit or service any of FBH's business".

19. HDH is holding itself out as an insurance broker offering the same insurance brokerage services as Hall although HDH has not been registered as a broker in the Commonwealth of Pennsylvania.

20. HDH was incorporated on December 15, 1982 and Hondru is President, shareholder and a member of the Board of Directors; Deutsch is Senior Vice President of HDH, shareholder and a member of the Board of Directors; and Horan is a Senior Vice President of HDH, a shareholder and an alternate member of the Board of Directors.

21. Hondru, Deutsch and Horan are all licensed insurance agents and Horan is also a licensed insurance broker.

22. While employed by Hall, Hondru, Deutsch and Horan helped develop and used, for Hall's benefit, customer lists, types of coverage, pricing, expiration dates, premium income generated, special insuring arrangements, clients' special insurance needs, underwriting information supplied by clients, all of which represented the entire work product of the business, extremely valuable to competitors, the release of which to third parties is considered unethical in the trade.

23. The pricing of insurance is confidential information in the insurance brokerage business.

24. The individual defendants became unhappy with their association with Hall and they decided to terminate their employment and form a competitive corporation.

25. The individual defendants organized a corporation and took to it all of Hall's work product that they could recall.

26. The individual defendants, acting for and on behalf of a competitor corporation, used the confi-

dential work product of Hall to obtain the business of 20 clients of Hall.

27. By meeting personally with Hall's clients, the individual defendants, having full inside information of the clients' needs and costs, were able to obtain broker-of-record letters from 20 clients of Hall, thus taking this business away from Hall.

28. The individual defendants are continuing to use the confidential information received from their employment with Hall to contact Hall clients to obtain broker-of-record letters, thus taking additional business away from their former employer.

29. Without the experience gained at Hall's, the contacts made on behalf of Hall's, and the inside information acquired while employed at Hall's, the individual defendants would not be in a superior position to glean away valuable business from Hall.

## DISCUSSION

A collateral issue has been raised as to the propriety of HDH holding itself out as an insurance broker when it is not. Hall desires that HDH be enjoined by the court from continuing such conduct. HDH counters by suggesting that the court has no jurisdiction since the Insurance Commissioner is the proper party to sue for such violation of the Insurance Department Act (40 P.S. §197.1).

It is not necessary for the court to reach this issue since relief can be afforded plaintiff regardless of this issue. However, the fact that individual defendants have knowingly held their corporation out to prospective clients in violation of the Insurance Act goes to their credibility.

The type of information generated in client files of an insurance brokerage agency, as hereinabove set out, constitutes trade secrets and confidential infor-

mation protected from exploitation by ex-employees to the detriment of the employer. Customer lists are trade secrets entitled to equitable protection. United Insurance Co. of America v. Dienno, 248 F. Supp. 553, 559, (E. D. Pa. 1965); Alexander v. Alexander, Inc. v. Drayton, 378 F. Supp. 824, 833 (E. D. Pa. 1974).

The present record, pleadings and depositions and affidavits, show that plaintiff has a reasonable probability of eventual success in the litigation and that it will suffer irreparable harm pendente lite if relief is not granted. Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177, 207 A.2d 768 (1965).

Trade secrets are protected by law even without an express contract between employer and employee. Ex-employees may not use trade secrets and/or confidential information for use in establishing a competing business. Trade secrets and confidential information are protected whether or not they are contained on documents or in the memory of ex-employee. Dienno, supra; Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A.2d 838 (1957).

The prima facie showing of unlawful use of protected information by defendants is more than adequate upon which to base a grant of preliminary relief to plaintiff. The additional complaints of plaintiff may be disposed of following final hearing.

Accordingly, the following order of court will be entered

## ORDER OF COURT

And now, this January 21, 1983, upon consideration of the pleadings, depositions, affidavits and briefs, and following arguments,

It is hereby ordered, adjudged and decreed that defendants be, and they are hereby, preliminarily enjoined from:

1. Soliciting Hall's clients;

2. Using any information gained through their association with Hall to compete unfairly with Hall.

3. Using or divulging Hall's clients lists and data, pricing formula, business methods and other trade secrets and confidential business information; and

4. From contacting, soliciting and interfering with Hall's contractual relationships with its clients and employees and from aiding Cooke and Mikan in potential breach of their contracts of employment with Hall.

It is further ordered, adjudged and decreed that defendants shall prepare for use at final hearing an accounting of all profits, commissions or other gains earned, or to be earned, from all broker-of record letters obtained from Hall's clients.

Defendants' motion for preliminary injunction is denied. The preliminary objections filed by defendants are dismissed. The parties are directed to complete discovery and the pleadings by February 20, 1983 and this case is set down for final hearing at 9:30 a.m. on February 28, 1983.