[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RESPONSE TO MOTION FOR ARTICULATION
(1) The court's decision and reasoning clearly meant to prohibit the defendants from soliciting or accepting new business from the four mentioned companies. When the court, in its original decision, used the words "do not service" the named customers as regards new business, it meant that the defendants were not to solicit or accept new business. "Servicing" business would result whether the business came by way of solicitation or acceptance of business without solicitation. The court believes a prohibition just on solicitation would not rectify the CT Page 6605 competitive disadvantage Custard suffered because of the actions of the defendants. Furthermore, such a limitation would make the court's order difficult to enforce and would provide Custard with a meaningless remedy in light of the way in which business is procured and maintained in this industry and due to the fact that the court order is only for six months.
Finally, the court found that the non-compete agreement had been violated and gave injunctive relief for that violation. The agreement specifically prohibits the defendant Nardi from soliciting or accenting
customers within a fifty-mile radius of his office after he leaves Custard-Allied employment. The court found the substantive provisions of the agreement were reasonable and were violated but merely limited the scope of injunctive relief to six months and applied the agreement to only four customers. In any event, the court intended to give similar and uniform injunctive relief for all violations.
(2) Counsel for Custard suggests that the court, in deciding the tortious interference claim against Mark Adjustment, inadvertently failed to explicitly base its decision on tortious interference with Custard's business relations with its customers.
In fact, it is true that in that section of the opinion the court did only refer to cases involving tortious interference with employee relationships.
However, in this case, the court concluded these two types of interference were interrelated and did in fact decide there was a tortious interference with customer relations. See page 103 of opinion, second full paragraph. Also see page 104 where the court said that Mr. Markle knew that (1) Mr. Nardi wanted to work for his company; (2) that Nardi was trying to line up Custard customers; and (3) that the Custard employees Nardi referred to Markle were top rate and would increase the efficiency of Mark Adjustment in competing with Custard. This underlines the court's view that the improper activity of interfering with employee relationships was, as indicated, inextricably bound up with the improper solicitation of Custard customers. That is, a finding that employees were improperly solicited depended, at least in part, on the fact that this was done as part of an effort to improperly acquire Custard customers and efficiently service them after they were acquired by use of Custard-Allied employees, cf. SHV Coal, Inc. v. Continental Grain Co.,545 A.2d 917, 921-922 (Pa., 1988); also see Albee Homes, Inc. v. CaddieHomes, Inc., 207 A.2d 768 (Pa., 1965).
Also see discussion of CUTPA violations by Mark Adjustment at pp. 108-110. The court referred to the two just mentioned cases as a basis for finding a CUTPA violation; both these cases dealt with tortious CT Page 6606 interference with business relations.
Corradino, J.